GULOTTA, Judge.
This is a suit for damages for personal injuries sustained by plaintiff, Karen Clarke Connell, when her automobile was *925 struck from the rear by a Jefferson Parish School bus driven by defendant, James D. Black. Black, the Jefferson Parish School Board and its insurer, Travelers Insurance Company, are co-defendants.
At the time of the accident, Mrs. Connell was on a mission for her employer and was, therefore, paid compensation by her employer’s workmen’s compensation insurer, who happened also to be Travelers Insurance Company.[1] She received $1,470.00, representing compensation for forty-two (42) weeks[2] and $1,002.15 for medical bills.
The question of liability was stipulated by defendants; therefore, quantum is the sole issue before the court. The trial judge rendered judgment in favor of Mrs. Connell in the sum of $5,000.00 for pain and suffering and in favor of her husband in the sum of $68.85 for property damage to the automobile, $1,002.00 for medical expenses and $3,780.00 for loss of wages of Mrs. Connell, plus legal interest.[3]
Judgment was further rendered in favor of intervenor, Travelers Insurance Company (as Workmen’s Compensation Insurer of Mrs. Connell’s employer), for the medical expenses and workmen’s compensation benefits paid on behalf of Mrs. Connell, which judgment was to be paid with priority out of any proceeds payable to plaintiffs.
Defendants appeal the judgment seeking a reduction in the award to plaintiffs. On the other hand, plaintiffs seek an increase in the amount of the award. They urge that in addition to Mrs. Connell’s low back injury, the accident caused an aggravation of certain female problems.[4]
We must determine whether the trial judge abused the broad discretion vested in him in setting the amounts awarded to plaintiffs.
The accident occurred on December 4, 1967. Mrs. Connell went to see an orthopedist, Dr. Gordon McFarland, the following day. His examination showed marked muscle spasm of the right back and that Mrs. Connell stood with a list or crooked back to the right. About two weeks later, he noted increased right sided leg pain from the buttock to the foot and over the side of the thigh, calf and foot. He felt Mrs. Connell had either an acute rupture or a herniated lumbo-sacral disc at that point and a subacute disc syndrome at the L4-5 interspace. Sciatica (leg pain) recurred with increasing severity. Dr. McFarland prescribed muscle relaxants and pain relievers, ■ told her to apply heat and sent her home for ten days of bed rest. Mrs. Connell stayed in bed until about the middle of December, then tried without success to return to work, but her back pain was too severe to permit her to do so. On a subsequent visit on December 15, 1967, Dr. McFarland gave her additional medication and advised her to remain in bed. Mrs. Connell stated that she took drugs and sedation during December every four hours and experienced extreme pain in the back with numbness of the entire leg. She was admitted to Ochsner Foun *926 dation Hospital and remained there from January S through January 12. After discharge, she stayed in bed until March, 1968, when she went back to Ochsner Clinic as an outpatient. Daily therapy was required ; and at the time of trial, Mrs. Con-nell indicated she was still doing therapy exercises and applying heat treatments three times weekly.
Dr. McFarland said Mrs. Connell was admitted to Ochsner Foundation Hospital with increasing pain and continuous vaginal bleeding.[5] She complained of trochan-teric type bursitis, pain over the lateral part of the right hip radiating down to the foot, and was injected with a local anesthetic and cortisone which relieved the foot pain. Dr. McFarland definitely attributed the bursitis to the accident. Dr. McFarland noted that Mrs. Connell had problems with nausea, vomiting, her back and generalized musculoskeletal problems. He stated that at this time (May, 1968) Mrs. Connell’s gynecologist felt she should have a hysterectomy which was performed in June. Dr. McFarland again saw her in July, 1968 (some 7-7(4 months after the accident) and the only pain in her back she experienced then was when sitting for long periods. However, he indicated Mrs. Con-nell still had some trochanteric bursitis. The last time Dr. McFarland saw her, he felt Mrs. Connell had a moderately severe lumbosacral strain complicated by gynecological problems. He could not definitely state whether the disc had been herniated, but he did anticipate Mrs. Connell would have difficulty for several more months.
After moving to North Carolina, Mrs. Connell saw Dr. W. S. Montgomery[6] (she was sent to him by defendant, Travelers Insurance Company) who gave her medication, changed her therapy and told her to continue heat treatments.
Thus, it is unquestionable that Mrs. Con-nell sufferéd with painful low back problems as a direct result of the accident. The substantial question yet to be resolved is whether the gynecological problems were directly caused by the subject accident. Dr. John Weed, specialist in obstetrics and gynecology who treated Mrs. Connell, stated that the final diagnosis prior to the hysterectomy was “vaginal bleeding of undetermined origin, sympotomatic uterine collapse.” Although it was Dr. Weed’s opinion that the disfunctional bleeding was precipitated by the accident and subsequent events and was a contributory factor, he further stated that the accident was not the entire cause of either her backache or the reason for the operation. We also note the fact that Mrs. Connell continued to take birth control pills through February, 1968, and according to Dr. Weed, this may have affected her normal female functions. We further note that Mrs. Connell had a history of female problems prior to the accident and had seen Dr. Alvin Lassen, a gynecologist, in this regard.
It is legion that plaintiffs must bear the burden of proving the accident was the direct and proximate cause of the suffering for which Mrs. Connell seeks compensation. Defendants, though admittedly negligent and responsible, are not liable in damages unless this negligence was the proximate cause of the particular injury or damage. Livaudais v. Black, 13 La.App. 345, 127 So. 129 (Orl.App.1930); Painter v. Bewley Furniture Co., 195 So. 70 (La.App. 2d Cir. 1940); Home Gas & Fuel Co. v. Mississippi Tank Co., 246 La. 625, 166 So.2d 252 (1964); Fabre v. B. F. Goodrich Company, 218 So.2d 617 (La.App. 4th Cir. 1969). We are not convinced that the gynecological problems resulted proximately from the defendants’ *927 negligence which caused the accident. Plaintiffs have failed to prove by a preponderance of the evidence a sufficient causal connection in this instance.
Plaintiffs urge that this court award an additional amount for cost of a maid for plaintiffs’ child during the time Mrs. Connell was bedridden. However, Mr. Connell’s testimony that the maid employed was the same one his wife had for one and one-half years while she worked, and the maid took care of the child at that time, convinces us that the trial judge correctly refused reimbursement for this expenditure.
Defendants seek a reduction in the award given for loss of wages based on a 42 week period. Unquestionably, the record justifies the amount awarded by the trial judge in this regard. The low back pain and bursitis clearly prevented Mrs. Connell from working for at least this period. The accident occurred on December 4, 1967, and Mrs. Connell was unable to work because of the pain. She entered the hospital in January, 1968, remained in bed through March, 1968, and despite the hysterectomy in June, 1968, still suffered from back pain when sitting for long periods. She also continued suffering from bursitis.
In view of the foregoing, we find the award of $5,000.00 to Mrs. Connell for pain and suffering for the back and related pain exclusive of the gynecological difficulties to be neither inadequate nor excessive.
Insofar as the amounts awarded to plaintiffs for property damage and medical expenses, we are in accord with the trial judge’s determination of quantum.
Accordingly, the judgment of the trial court in favor of plaintiffs and intervenor and against defendants is hereby affirmed. Costs to be paid by defendants-appellants.
Affirmed.

. Travelers Insurance filed an intervention to recover the above amounts paid out of any judgment rendered against defendants.

. She was paid at a rate of $36.00 per week.

. The $68.85 was stipulated property damage. The $1,002.00 reflects hospitalization charges and doctors’ costs paid out by intervenor excluding medical or hospital costs attributable to gynecological problems.
The $3,780.00 represents the $90.00 per week take home pay (Mrs. Connell grossed $113.00 per week) for a period of 42 weeks which was stipulated by counsel and represents the amount of time in-tervenor paid workmen’s compensation to Mrs. Connell.

.The trial judge denied recovery for personal injuries and special damages relating to the gynecological problems stating “that the gynecological problems suffered by the lady, Mrs. Connell, have not been proven to be directly or causally related to the accident * * * ”

. Dr. McFarland stated that the muscle spasm and list could not be related to gynecological problems.

. Plaintiffs moved to North Carolina to live subsequent to the accident. Dr. Montgomery saw Mrs. Connell three times — in October and November of 1968, and in January of 1969.