BLACK, Judge.
Jordan Marcum, her vicariously-liable employer, Artistic Pools of Florida Inc. (“Artistic Pools”), and her liability insurer, Allstate Insurance Company (“Allstate”), appeal an adverse judgment resulting from an automobile accident allegedly causing personal injuries to Angela Hayward.[1] Three issues were raised on appeal; we find the first issue to be dispositive, and as a result, we do not reach the other two. Because it is undisputed that Ms. Marcum lost consciousness while driving due to a seizure, resulting in the accident, and because Ms. Marcum’s loss of consciousness was unforeseeable, the trial court should have directed a verdict for the defense. Therefore, we reverse.
I. Background
On the day of the accident, Ms. Marcum, assistant manager of Artistic Pools, was driving a company vehicle within the course and scope of her employment. Her coworker, Charles Heninger, was riding in the passenger seat. Ms. Marcum testified that she felt as though she momentarily blacked out, woke up briefly, and then blacked out again. Her next recollection was after the accident when the paramedics were present. According to Mr. Hen-inger, Ms. Marcum stated that she felt as though she had blacked out, stated that she did not feel well, asked where they were going, and then she suddenly lost consciousness. Mr. Heninger testified that he tried to stop the vehicle by depressing the brake pedal with his hand, but he was unable to reach it because of his seatbelt restraint. He testified that he was down on the floorboard when he felt an impact. Mr. Heninger estimated that at most fifteen seconds elapsed between the time Ms. Marcum indicated that she may have blacked out and the time of impact.
Ms. Hayward testified that she was stopped at a red light and saw the Artistic Pools vehicle in her rearview mirror. When she realized that the vehicle was not going to stop, she braced for impact, and the vehicle struck her car from behind. Ms. Hayward testified that after she was struck, she exited her car and walked toward the Artistic Pools vehicle, at which time she observed Ms. Marcum having a seizure. Ms. Hayward retrieved a blanket from her car and helped reposition Ms. Marcum so that she would not swallow her tongue.
Doctor Denise Griffin, a board certified neurologist, testified that Ms. Marcum could not have anticipated the seizure.
[Counsel:] Is there any way that Jordan Marcum should have anticipated that this type of event was going to occur?
[Dr. Griffin:] No, sir, not to my knowledge.
[Counsel:] And if there was some sort of warning sign, is that something you would expect a lay person to recognize as an oncoming seizure?
[Dr. Griffin:] No, sir, I couldn’t — I couldn’t tell if I were going to have a *697 seizure, and I see seizure [sic] every day, because sometimes there is no warning, and if there is a warning, it can be just be as — as vague as a weird feeling, a funny taste in your mouth. It’s just very nonspecific and it doesn’t even need to be there.
[[Image here]]
[Counsel:] And is it fair to describe your opinion related to the seizure as it was one of [a] sudden and unexpected nature?
[Dr. Griffin:] Yes, sir.
Dr. GrifSn defined the seizure as “crypto-genic,” which by definition has no known cause.
Ms. Hayward did not offer opposing expert testimony regarding the seizure. Her only expert witness was an orthopedic surgeon who provided testimony about her injuries. In response to Ms. Marcum’s defense, Ms. Hayward argued that the episode was neither sudden nor unexpected. Ms. Hayward argued that when Ms. Mar-cum described a “funny feeling” prior to blacking out, she was experiencing what is known in neurologic terms as an “aura” which should have alerted her to pull over. Dr. Griffin explained that “[i]f a person feels an aura that they recognize is their epileptic aura ... they can, you know, sit down in a safe place.” However, Ms. Mar-cum testified that she had never experienced a seizure prior to the one that resulted in the accident.
Ms. Marcum argued that she experienced a sudden and unexpected seizure and that there was insufficient time between the onset of the seizure and the collision for her to take preventative action. Accordingly, she moved for a directed verdict. After hearing argument, the trial court denied Ms. Marcum’s motion, ruling that factual questions remained for jury determination as to whether Ms. Mar-cum could have avoided the impact.
II. Discussion
The standard of review on appeal of a trial court’s ruling on a motion for directed verdict is de novo. Fell v. Carlin, 6 So.3d 119, 120 (Fla. 2d DCA 2009). Here, we must determine if there is sufficient record evidence when viewed in the light most favorable to Ms. Hayward to permit the jury to decide if Ms. Marcum was negligent or if Ms. Marcum’s sudden loss of consciousness defense required the verdict to be directed in her favor. See id. (quoting Sims v. Cristinzio, 898 So.2d 1004, 1005 (Fla. 2d DCA 2005)).
“It is well settled that negligence is not chargeable against the operator of a motor vehicle who, while driving, suffers a sudden loss of consciousness from an unforeseen cause.” Tropical Exterminators, Inc. v. Murray, 171 So.2d 432, 433 (Fla. 2d DCA 1965); see also Bridges v. Speer, 79 So.2d 679, 681 (Fla.1955) (“It is not even simple negligence if one has a sudden attack, loses control of his car and causes an accident if he had no premonition or warning.”); Feagle v. Purvis, 891 So.2d 1096, 1098-99 (Fla. 5th DCA 2004) (“As a general rule, the operator of an automobile, vessel or other mode of transportation who unexpectedly loses consciousness or becomes incapacitated is not chargeable with negligence as a result of his or her loss of control.”). To establish this defense, a defendant is required to prove the following:
1. The defendant suffered a loss of consciousness or capacity. See, e.g., Bridges v. Speer, 79 So.2d 679, 681 (Fla. 1955); Wilson v. The Krystal Co., 844 So.2d 827[, 828] (Fla. 5th DCA 2003).
2. The loss of consciousness or capacity occurred before the defendant’s purportedly negligent conduct. See Malcolm v. *698 Patrick, 147 So.2d 188, 193 (Fla. 2d DCA 1962).
3. The loss of consciousness was sudden. See, e.g., Baker v. Hausman, 68 So.2d 572, 573 (Fla.1953); Malcolm [, 147 So.2d at 193].
4. The loss of consciousness or capacity was neither foreseen, nor foreseeable. See, e.g., Baker [, 68 So.2d at 573]; Wilson [, 844 So.2d at 828]; Wingate [v. United Servs. Auto. Ass’n, 480 So.2d 665, 666 (Fla. 5th DCA 1985) ]; Malcolm [, 147 So.2d at 193].
Feagle, 891 So.2d at 1099.
Ms. Marcum successfully established her defense. It is undisputed that Ms. Marcum lost consciousness while driving as a result of a cryptogenic seizure. Her testimony, along with that of Mr. Heninger, established that she lost consciousness before the impact occurred. Further, she had never experienced a seizure before this incident, and there was no evidence that she had notice of being at risk for a seizure. Dr. Griffin testified that Ms. Marcum would have had no way to anticipate the onset of the cryptogenic seizure. Finally, the testimony of Ms. Marcum and Mr. Heninger established that there was insufficient time between the onset of the seizure and the impact with Ms. Hayward’s vehicle for her to take any evasive maneuvers.
“[F]oreseeability is the foundation for establishing the incapacity or loss of consciousness of a defendant .... ” Feagle, 891 So.2d at 1099. The fact that Ms. Marcum indicated to Mr. Heninger that she did not feel well, a sensation she later described as a “funny feeling,” shortly before losing consciousness, resulting in the accident, did not show that the impending seizure was foreseen. See Baker, 68 So.2d at 573 (holding that a showing that the driver was not feeling well shortly before the accident did not demonstrate a premonition of a stroke); Wingate, 480 So.2d at 666 (holding that driver’s statement made shortly before the accident that he was not feeling well did not demonstrate a premonition of a heart attack).
Accordingly, we reverse the final judgment and remand with instructions that judgment be entered in favor of Ms. Mar-cum, Artistic Pools, and Allstate.
Reversed and remanded with instructions.
KELLY and WALLACE, JJ„ Concur.

. On August 23, 2012, the trial court rendered an order granting Ms. Hayward’s motion to join Allstate as a party defendant to the final judgment pursuant to section 627.4136(4), Florida Statutes (2012).